In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00199-CR


______________________________




JAMMY COOPER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


 Gregg County, Texas


Trial Court No. 36,727-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Jammy Cooper was convicted for the third-degree felony possession of a controlled
substance. Cooper, acting pro se, filed a notice of appeal with the Gregg County District Clerk, who
forwarded the appeal to the Twelfth Court of Appeals. Subsequently, Cooper's appointed attorney,
unaware that the appeal had already been filed in the Twelfth Court of Appeals, filed a second notice
of appeal on behalf of his client in this Court.

 Cooper's attorney has now filed in both courts "Appellant's Motion for Administrative
Dismissal of Appeal in the Twelfth Court of Appeals and Continuation of Appeal in the Sixth Court
of Appeals." The Twelfth Court of Appeals has overruled the motion.

 Gregg County, the county from which this appeal originated, lies in two different appellate
districts. Tex. Gov't Code Ann. § 22.201(g), (m) (Vernon Supp. 2008). Appeals from Gregg
County may be taken either to the Sixth or the Twelfth Court of Appeals at the option of the
appellant. Capehart v. State, 257 S.W.3d 814, 815 (Tex. App.--Texarkana 2008, no pet.); see Miles
v. Ford Motor Co., 914 S.W.2d 135, 137 n.4 (Tex. 1995). Jurisdiction lies in the appellate court
where the appeal is first perfected. Capehart, 257 S.W.3d at 815; see Miles, 914 S.W.2d at 138. 

 Here, in the first-filed notice of appeal, the Gregg County District Clerk forwarded the notice
of appeal to the Twelfth Court of Appeals. "The general common law rule in Texas is that 'the court
in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts.'" 
Capehart, 257 S.W.3d at 815; see Miles, 915 S.W.2d at 138; Curtis v. Gibbs, 511 S.W.2d 263, 267
(Tex. 1974). Therefore, jurisdiction lies solely in the Twelfth Court of Appeals. See Capehart, 257
S.W.3d at 815; see also Miles, 914 S.W.2d at 138; Curtis, 511 S.W.2d at 267. 

 Because Cooper has already appealed to the Twelfth Court of Appeals, that court has
dominant jurisdiction over this appeal. Cooper cannot also invoke the jurisdiction of this Court by
filing a later notice of appeal directed to this Court. 

 This is a criminal case, with one appellant, and in this particular instance, the State has no
right of appeal. Therefore, we find that the proper remedy, rather than abating the case in accordance
with Miles, is to dismiss the appeal. Accordingly, we dismiss this appeal for want of jurisdiction. 
See Tex. R. App. P. 42.3(a). 



 Josh R. Morriss, III

 Chief Justice


Date Submitted: November 25, 2008 

Date Decided: November 26, 2008 


Do Not Publish




ocked="false" UnhideWhenUsed="false" Name="Placeholder Text"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00058-CR

                                                ______________________________

 

 

                              DARRELL WAYNE HOOD, JR.,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the Sixth
Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 24146

 

                                                          
                                        

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            When his
one-year-old son died after being hit in the chest, Darrell Wayne Hood, Jr.,
pled guilty to murder, pled true to a deadly weapon finding, pled not
true to two sentence-enhancement allegations, and left punishment issues for
the jury.  The jury assessed a life
sentence and a $10,000.00 fine.[1]  We affirm the judgment of the trial court
because (1) Hoods oral motion for continuance preserved nothing for our
review, (2) the failure to permit individual voir dire of the jury panel
was not error, and (3) legally sufficient evidence supports the jurys finding
of true on the enhancement allegations.

Background

 

            On August 9,
2010, Hood and Bridget Archie rushed their one-year-old child, Darrell Wayne
Hood, III, to the Paris Regional Medical Center.  The child was unresponsive and in full
cardiac arrest.  Hood told a nurse that
he hit the child in the chest because the child was crying.  The child died shortly thereafter, and Hood
was arrested and charged with his murder.

            Two
newspaper articles appeared in The Paris News relating to the childs
death.  The first article was published
in August 2010.  Information regarding
this article came to light during voir dire, but no details were given
about the length of the article, what information it contained, or whether it
mentioned criminal charges.

            The second newspaper
article was published March 22, 2011, the day before jury selection in Hoods
criminal trial.  The article indicated
Hood was scheduled to go to trial the following day on charges of murder in the
death of his son.  The article continues:

Darrell Wayne Hood III, was pronounced dead at Paris
Regional Hospital on August 9, 2010, after his father Darrell Wayne Hood Jr.,
and the childs mother drove the injured toddler to the hospital.  The death was ruled a homicide because of
blunt-force trauma.  Autopsy reports said
the child suffered traumatic injuries to the torso.  The childs mother said the toddler had
become unresponsive before the trip to the hospital.  Hood was taken into custody at the hospital
by Paris Police Department officers when it was learned he allegedly struck the
child.  Hood has been charged with murder
with a deadly weapon and as an habitual offender.  Jury selection is scheduled to begin
Wednesday, with testimony to follow Thursday in the 6th District Court in the
Lamar County Courthouse.

 

            Before voir
dire began March 23, 2011, Hood orally moved for a continuance to give him time
to seek a change of venue based on the March 22 article.  In the alternative, Hood requested the
opportunity to individually voir dire each veniremember regarding the newspaper
article.  Both the motion for continuance
and the motion for individual voir dire were denied.  On appeal, Hood complains of both rulings and
asserts that the evidence is legally insufficient to support the jurys finding
that he committed two previous felonies.

(1)        Hoods Oral Motion for Continuance
Preserved Nothing for Review

 

            If
there is a reasonable likelihood that prejudicial pretrial news will prevent a
fair trial, the trial should be continued until the threat abates or until the
case is transferred to another county not so permeated with publicity.  Sheppard
v. Maxwell, 384 U.S. 333, 363 (1966). 
A motion for continuance based on adverse publicity is addressed to the
discretion of the trial court.  Lopez v. State, 628 S.W.2d 77, 81 (Tex.
Crim. App. [Panel Op.] 1982).

            A criminal
action may be continued on the written motion of the State or of the defendant,
upon sufficient cause shown; which cause shall be fully set forth in the motion.  Tex.
Code Crim. Proc. Ann. art. 29.03 (West 2006).  All motions for continuance must be sworn to
by a person having personal knowledge of the facts relied on for the
continuance.  Tex. Code Crim. Proc. Ann. art. 29.08 (West 2006).  The record indicates that only an oral motion
for continuance was made.  The denial of
an oral motion for continuance preserves nothing for our review.  Anderson
v. State, 301 S.W.3d 276, 27678, 281 (Tex. Crim. App. 2009); Robinson v. State, 310 S.W.3d 574, 580
(Tex. App.Fort Worth 2010, no pet.).

            Even if a
written, sworn motion for continuance had been presented, the trial court would
not have erred in overruling the motion. 
This record does not describe a case of pervasive pretrial publicity.  Hood complains of only one newspaper article,[2]
which cannot be fairly characterized as prejudicial.  As a general rule, media accounts that are
accurate and objective are not prejudicial and inflammatory.  Gonzalez
v. State, 222 S.W.3d 446, 451 (Tex. Crim. App. 2007).  The content of the subject article is
succinct and appears factual and objective. 
Hood does not point to anything specifically inflammatory or prejudicial
in the article and has not established that any of the venirepersons were
unqualified as a result of reading it. 
To the contrary, the record indicates that all venirepersons who read
the article specifically stated that they were not influenced by it.[3]

            Moreover, as
in Lopez, the motion for continuance
was urged before jury selection, and no witnesses were heard in support of the
contention that the jury was improperly influenced.  The Lopez
court determined that, because no evidence was offered in support of the
motion and because it was not re-urged during voir dire, there was no abuse of
discretion demonstrated.  Lopez, 628 S.W.2d at 81.  The same reasoning applies here.[4]  We overrule Hoods arguments regarding his
continuance motion.

(2)        The
Failure to Permit Individual Voir Dire Was Not Error

 

            Hood
requested individual voir dire on the specific issue of whether the
veniremembers read the newspaper articlepublished the day before jury
selection in Hoods criminal caserelating to the death of Hoods son and
whether they were thereby prejudiced. 
The trial court denied the request. 
Hood claims the failure to permit individual voir dire of the jury panel
was an abuse of discretion, deprived him of a fair and impartial trial, and
deprived him of due process under the United States and Texas Constitutions.

            A
trial court has the discretion to order individual voir dire in any case.  Rich v.
State, 160 S.W.3d 575 (Tex. Crim. App. 2005).  In a noncapital, felony prosecution,
individual or panel voir dire examination is a matter within the trial
courts discretion, subject to review only to determine whether the trial court
abused its discretion.[5]  Robles
v. State, 627 S.W.2d 466 (Tex. App.Houston [1st Dist.] 1981, no pet.).

            An abuse of
discretion is shown when evidence of pretrial publicity or prejudice is of such
a magnitude that denial of individual examination would amount to reversible
error and denial of due process.  Johnson v. State, 467 S.W.2d 247 (Tex.
Crim. App. 1971).  Only in an extreme
case is it necessary to exclude the veniremembers from the courtroom during the
selection of the jury.  Johnson, 467 S.W.2d at 252.  Denial of individual examination is an abuse
of discretion when pretrial publicity and resultant prejudice is of an extreme
nature.  See Robles, 627 S.W.2d at 467.

            Because this
was not a capital case, Hood did not have an absolute right to individually
question veniremembers apart from the rest of the panel.  Having reviewed the record of the voir dire,
we find there was no abuse of discretion. 
Only ten panel members read either of the two newspaper articles
relating to this case.  Each of these
prospective jurors stated that they were not influenced by the exposure.  No inflammatory remarks or information
regarding Hood was offered by any prospective juror.  Moreover, Hoods counsel was not prevented
from asking any questions about pretrial publicity and never specifically
requested that a particular venireperson be questioned at the bench, out of the
hearing of the rest of the panel.  No
non-constitutional error is shown.

            Hood further
claims his Sixth and Fourteenth Amendment rights were violated.  The Sixth Amendment provides that, in a
criminal prosecution, an accused has the right to an impartial jury.  U.S.
Const. Amend. VI.  The Due Process
Clause of the Fourteenth Amendment guarantees that no person be deprived of
life, liberty, or property, without due process of law.  U.S. Const.
amend. XIV, § 1.  Hood claims he was
denied an impartial jury and that he was denied due process of law based on the
fact that the trial court did not permit individual voir dire on the issue of
the article in the Paris newspaper.  We
disagree.[6]

            Mere juror
exposure to information about a defendants prior convictions or news accounts
of the crime does not, by itself, raise a presumption the defendant was
deprived of due process and cannot receive a fair trial by an impartial jury.  Murphy v. Florida, 421 U.S. 794, 799 (1975); see also MuMin v. Virginia, 500 U.S. 415, 416 (1991) (While adverse
pretrial publicity can create such a presumption of prejudice that the jurors
claims that they can be impartial should not be believed, . . . this is not
such a case.).  Jurors do not have to be
totally ignorant of the facts and issues of a particular case.  Ransom v. State, 789 S.W.2d 572, 579 (Tex. Crim. App. 1989); Russell v. State, 146 S.W.3d 705, 71011
(Tex. App.Texarkana 2004, no pet.).

            Here, the
record indicates nothing more than exposure of certain veniremembers to a
newspaper account of the crime; it does not support the claim that Hood was
denied a fair and impartial trial or that his due process rights were
violated.  Accordingly, we overrule all
points of error based on the inability to separately question veniremembers
regarding pretrial publicity.

(3)        Legally Sufficient Evidence Supports the
Jurys Finding of True on the Enhancement Allegations

 

            Hood next
contends the State failed to properly prove (1) the two prior convictions used
for enhancement purposes[7]
and (2) that Hood was linked to the prior convictions.  See
Flowers v. State, 220 S.W.3d 919, 921
(Tex. Crim. App. 2007) (to establish defendants prior conviction, State must
prove prior conviction and link defendant to it).  No specific document or mode of proof is
required to prove these two elements.  See id.  Instead, the State may prove both of these
elements in a number of ways.  Id. 
For example, the State can meet its burden by introducing multiple
documents that, when read together, contain sufficient information to
establish both the existence of the prior conviction and the defendants
identity as the person convicted.  Id. at 92122.

            To
prove the existence of Hoods November 18, 2009, conviction for domestic abuse,
the State introduced a certified copy of the records of Darrell W. Hood from
the Louisiana Department of Public Safety and Corrections as subscribed and
sworn by the custodian of those records. 
These records include, among other things (1) a bill of information
alleging Darrell W. Hood committed the offense of R.S. 14:35.3  domestic
abuse battery on Bridget Archie[8]
by grabbing and choking her by the throat, and (2) criminal case minutes of the
First District Court of Caddo Parish, Shreveport, Louisiana, indicating that,
on March 31, 2009, Darrell W. Hood pled guilty to the charge of domestic abuse
battery and was sentenced to three years in the Louisiana Department of
Corrections.  The records further
indicate the sentence was suspended and Hood was placed on a one-year term of
probation.[9]  Finally, Exhibit 17 indicates that Hoods
probation was revoked November 18, 2009, at which time Hood was sentenced to a
one-year prison term.[10]
 The criminal case minutes were attested
by the deputy clerk for the First Judicial District Court of Caddo Parish.[11]

            The State
introduced similar documents to prove Hoods conviction for middle grade felony
theft.[12]  These documents include, among other things
(1) a document which appears to be a bill of information indicating that Darrel
W. Hood, Jr., stole merchandise from Wal-Mart on April 8, 2002, and (2)
criminal case minutes of the 26th Judicial District Court of Bossier Parish in
Benton, Louisiana, for cause number C 113197, indicating that, on January 10,
2003, Hood entered a plea of guilty in cause number C 113197 and was thereafter
sentenced, on July 14, 2003, to two years in the Louisiana Department of
Corrections.  The records further
indicate the sentence was suspended and Hood was placed on a two-year term of
probation.[13]  Finally, the criminal case minutes for cause
number C 113197 indicate that Hoods probation was revoked September 8,
2004.  

            Because
final, written judgments documenting Hoods two prior convictions were not
introduced into evidence, Hood maintains the State failed to prove the
existence of those convictions.  Hood
claims that, because a written judgment is essential to the finality of a
conviction in Texas, proof of a prior conviction must be accomplished via
introduction of a judgment and a sentence. 
Certainly, a written judgment is essential to the finality of a
conviction in Texas.  Jones v. State, 795 S.W.2d 199, 202
(Tex. Crim. App. 1990) (complete written judgment essential to finality of
conviction since appeal may not be taken until one is entered).  For purposes of appeal, a final written
judgment is required.  A final written
judgment is not required, however, to prove a prior conviction.  Flowers,
220 S.W.3d at 92122.

             In Flowers,
the State offered a certified copy of Flowers drivers license record and a
computer printout from Dallas County showing Flowers prior convictions.  Flowers claimed the computer printout was not
a real judgment and, therefore, could not be used to prove his prior DWI
conviction.  The issue was not, however,
whether the computer printout was a judgment. 
Instead, the issue was whether a reasonable trier of fact could view the
printout, together with Flowers drivers license record, and find beyond a reasonable
doubt that the alleged prior DWI conviction existed and that the conviction was
linked to Flowers.  Id. at 924.  The computer
printout, which contained detailed personal information about Flowers and his
DWI conviction, together with Flowers drivers license record, which linked
him to the computer printout, was sufficient to prove the prior
conviction.  Id.  The court could compare
Flowers drivers license picture to the defendant in court to link the
defendant in court to the prior conviction. 
The totality of the States evidence thus proved the enhancement
paragraph true beyond a reasonable doubt.

            The
instant case is similar to Flowers.  Here, criminal case minutes together with the
Louisiana equivalent of indictments for each of the prior convictions were
entered into evidence.  The criminal case
minutes from each of the Louisiana convicting courts list Hoods name and date
of birth along with other physical descriptors. 
They describe the offenses with which Hood was charged, the cause
numbers for each, Hoods court appearances, and the sentence received in each
case.  These documents are appropriately
verified by the proper custodian of records, and are certified as true and
correct.  Importantly, these documents
indicate Hood was convicted for each of the charged offenses.  The information here is sufficient for a
reasonable trier of fact to find the existence of each of these convictions
beyond a reasonable doubt.  See id.

            Hood
further claims that the State failed to prove that he is the defendant
referenced in States Exhibit 17.  The
State had the burden to prove that Hood was the same person convicted of each
of the prior felonies.  See Flowers, 220 S.W.3d at 921; Beck v. State, 719 S.W.2d 205, 210 (Tex.
Crim. App. 1986) (It is incumbent on the State to go forward and show by
independent evidence that the defendant is the person so previously
convicted.).  Absent evidence linking
the defendant to the prior conviction, evidence of the prior conviction is not
relevant.  Benton v. State, 336 S.W.3d 355, 357 (Tex. App.Texarkana 2011,
pet. refd).  Whether sufficient links
are present is determined on a case-by-case basis.  Human
v. State, 749 S.W.2d 832, 83536 (Tex. Crim. App. 1988).  The State is entitled to use circumstantial
evidence to prove the defendant is the same person named in the alleged prior
convictions.  Id. at 83536, 839.

            Exhibit 17
lists Hoods name as Darrell W. Hood, and Darrell W. Hood, Jr. on documents
pertaining to the domestic abuse conviction, and as Darrell W. Hood, Jr. on
documents pertaining to the middle grade theft conviction.  At trial, Hood was identified as Darrell
Wayne Hood, Jr.  While the name alone is
not the sole evidence connecting Hood to the prior convictions, it is unlikely
that another by the name of Darrell Hood, Jr., was convicted in Louisiana
during the time frames listed in those prior convictions.  As noted, the name Bridget Archie belonged
not only to the mother of the deceased child in the current case, but also to
the victim in one of Hoods prior convictions, a fact further connecting Hood
to that conviction.

            Exhibit 17
also includes a suspect rap sheet for each of the prior convictions.  Each rap sheet includes a 4 x 6 photograph
of Darrell W. Hood, Jr.  The jury could
use these photographs to compare to Hood at trial.  See
Flowers, 220 S.W.3d at 925 (drivers license record included picture of
Vincent Henry Flowers which trial court could use to compare to person
standing before him).  Finally, Hood
testified that he was convicted of the felony offense of domestic violence in
Louisiana in 2009 and that his probation thereon had been revoked.  With respect to the theft conviction, Hood
testified that he pled guilty to theft in January 2003 and was sentenced to
probation, but denied this was a felony conviction.  

            Considering
the totality of the evidence linking Hood to the prior convictions, a rational
jury could have found beyond a reasonable doubt that Hood was indeed the same
person identified in the prior convictions admitted via States Exhibit 17.

            We affirm
the judgment of the trial court.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          October
20, 2011

Date Decided:             October
28, 2011

 

Do Not Publish

 

 

 











[1]Hood
pled not true to two prior felony convictions alleged by the State for
enhancement purposes.  The jury found the
enhancement paragraphs to be true.  





[2]We
do not consider the first article because Hood did not mention this article to
the trial court or provide any evidence of what may have been included in the
article.  Further, Hood did not base his
motion for continuance on this article and does rely on the existence of this
article as a basis for his argument that the trial court erred in failing to
grant his motion for continuance.  Tex. R. App. P. 38.1.

 





[3]Two
veniremembers also indicated they read an article about the incident in the
Paris newspaper during the summer of 2010. 


 





[4]Hood
further claims the denial of his motion for continuance deprived him of a fair
and impartial trial and violated his due process rights under the United States
and Texas Constitutions.  For the reasons
stated in the following section of this opinion, Hoods constitutional claims
would not have prevailed, even if error had been preserved.

 





[5]Individual
voir dire is mandated on demand of either party in capital felony cases in
which the State seeks the death penalty. 
Tex. Code Crim. Proc. Ann.
art. 35.17 (West 2006).

 





[6]The
State alleges Hood waived his constitutional claims of error because he failed
to distinguish between state and federal constitutional grounds on appeal and
because he has asserted multifarious points of error.  We decline to find waiver in this
circumstance.  





[7]The
indictment against Hood alleged the felony offense of murder with a deadly
weapon, habitual offender.  The habitual
offender allegations of the indictment stated:

 

[P]rior to the commission
of the offense or offenses set out above, the defendant was finally convicted
of the felony offense of Middle Grade Felony Theft, in the 26th Judicial
District of the Parish of Bossier, Louisiana, in Cause Number 113197, on
September 8, 2004, and, that prior to the commission of the offense or offenses
for which the defendant was convicted as set out above, the defendant was
finally convicted of the felony offense of Domestic Abuse Battery, in the First
District Court of the Parish of Caddo, Louisiana, in Cause Number 275383, on
November 18, 2009.





[8]That
the names of both the prior offender and his victim match the names, here, of
the two parents of the child victim is remarkable.

 





[9]The
minutes state that

 

THE ACCUSED WAIVED
ARRAIGNMENT AND PLED GUILTY TO THE CHARGE. 
THE COURT INFORMED THE DEFENDANT OF HIS CONSTITUTIONAL RIGHTS AS PER
BOYKIN VS. ALABAMA (SEE COURT REPORTERS TRANSCRIPT).  WHEREUPON, THE DEFENDANT WAS SENTENCED TO BE
CONFINED AT HARD LABOR FOR A PERIOD OF THREE (3) YEARS AND COMMITTED TO THE
LOUISIANA DEPARTMENT OF CORRECTIONS, SUBJECT TO THE CONDITIONS PROVIDED BY
LAW.  THE COURT ORDERED THE JAIL SENTENCE
SUSPENDED AND THE DEFENDANT WAS PLACED ON SUPERVISED PROBATION FOR A PERIOD OF
ONE (1) YEAR WITH SPECIAL CONDITIONS (SEE SPECIAL CONDITIONS OF
PROBATION).  THE COURT INFORMED THE
DEFENDANT OF HIS RIGHT TO POST-CONVICTION RELIEF PROCEEDINGS (JUDGE MOSELEY).

 





[10]The
case minutes indicate that, on November 18, 2009, 

 

THE ACCUSED, PRESENT
WITH COUNSEL, WAYNE DISHMAN, THE DISTRICT ATTORNEY AND PROBATION OFFICER BEING
PRESENT, CASE WAS TAKEN UP FOR PROBATION REVOCATION HEARING. THE DEFENDANT ADMITTED
THE ALLEGATIONS OF THE PETITION. 
WHEREUPON, THE COURT ORDERED THE DEFENDANTS PROBATION REVOKED AND THE
ORIGINAL SENTENCE AMENDED TO ONE (1) YEAR HARD LABOR.  THE COURT ORDERED THE DEFENDANT BE GIVEN
CREDIT FOR TIME SERVED AND ORDERED SAID SENTENCE RUN CONCURRENT WITH ANY OTHER
SENTENCE.  (JUDGE MOSELY0 [sic]).

 





[11]A
fingerprint attachment sheet was also a part of the record.  This document identifies the defendant as
Darrell Hood, Jr.  The date of birth is
listed as May 19, 1983, race is listed as black, and sex is listed as
male.  The fingerprint attachment bears
the signature of Darrell W. Hood and ostensibly contains Hoods fingerprints,
as certified and attested by the deputy clerk.

 





[12]All
documents introduced to prove Hoods two prior convictions were made a part of
States Exhibit 17, and all were records maintained by the Louisiana Department
of Public Safety and Corrections, as verified by the custodian of records for
that entity.  

 





[13]The
case minutes indicate that, on January 10, 2003,

 

Defendant Hood in open
Court with Ginger Johnson from Indigent Defender Board, withdrew his former
plea of not guilty and entered a plea of guilty.  The court explained the rights to a trial by
jury, to confront accusers, to compulsory process, to appeal, to court
appointed or private counsel, and the privilege against
self-incrimination.  The defendant
indicated he understood and waived these rights.  The DA summarized the facts and the court
questioned defendant and his attorney and determined that the plea was free and
voluntary and with full understanding of rights.  The Court then accepted the plea of
guilty.  Defendant is remanded for
sentence, pending a pre-sentence investigation. 
Bond conditions:  (1) banned fro
[sic] Walmart, (2) proof of efforts toward GED. 
(Stinson)  

 

The case minutes for July 14, 2003, indicated that
Hood appeared 

 

[I]n open Court with
Ginger Johnson from Indigent Defender Board; whereupon the Court explained for
the record the considerations taken into account and the factual basis therefore
in imposing the following sentence, to-wit: 
Defendant is sentenced to serve 2 years at hard labor in Louisiana
Department of Corrections, suspended and placed on active probation for 2
years, with special conditions . . . .